IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMES E. DUCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-09-259-D |
| | ) | |
| UNITED STATES, Department of | ) | |
| Veteran Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

# **O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 25]. Defendant seeks a judgment as a matter of law under Fed. R. Civ. P. 56 in this action for medical malpractice brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80. Plaintiff has responded in opposition to the Motion, and Defendant has filed a reply brief. The Motion is thus at issue.

**Standard of Decision**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e)(2). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. Although a district court has discretion to go beyond referenced portions of the supporting material, it is not required to do so. *Id.* at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Statement of Undisputed Facts**

Plaintiff James E. Duckett is a veteran of the United States Army. At the relevant time, he was 51 years old and suffered from end-stage renal disease, hypertension, diabetes, heart disease, and other medical conditions. In November, 2005, Plaintiff was being evaluated at the Veteran's Affairs Medical Center (VAMC) in Oklahoma City for a possible kidney transplant, and an echocardiogram was performed as part of the process. The echocardiogram revealed a moderate-sized, free-flowing pericardial effusion, which means an abnormal amount of fluid in the pericardium or pericardial sac around the heart. In December, 2005, Plaintiff was evaluated by a cardiology fellow at VMAC, Dr. Derek Norman, M.D. Because Plaintiff was asymptomatic with no evidence of tamponade, Dr. Norman decided not to order invasive treatment but to monitor the effusion. Tamponade is a condition in which a significant amount of fluid accumulates in the pericardium, putting pressure on the heart and preventing the ventricles from filling properly, which

causes ineffective pumping of the heart. Plaintiff's pericardial effusion was reevaluated in January, 2006, and there remained no evidence of tamponade or other complications.

During a subsequent visit to the cardiology clinic on April 12, 2006, Dr. Norman decided to admit Plaintiff to VAMC for further evaluation due to a shortness of breath, history of pericardial effusion, and other symptoms. On April 13, 2006, another echocardiogram revealed a large, free-flowing pericardial effusion circumferential to the heart. Based on these results and due to other symptoms such as shortness of breath, a decision was made to perform a pericardiocentesis, which is a procedure that involves placing a needle into the pericardium, inserting a catheter, and removing excess fluid. Dr. Norman met with Plaintiff on April 14, 2006, before the procedure and informed him of the risks, benefits, possible complications, expected results, and medical alternatives. Plaintiff was expressly informed that a known risk is perforation of the heart.

Dr. Norman attempted the periocardiocentesis on April 14, 2006, with Dr. Eliot Schechter, M.D., as the attending physician. During the procedure, the needle was mistakenly inserted in the right ventricle of Plaintiff's heart, and the catheter was placed in the right ventricle. Defendant relies on a procedure note indicating that Plaintiff's heart was being monitored during the pericardiocentesis and there were no advance indications of a puncture of the heart or a misplaced catheter.[1] The medical records reflect that an echocardiogram during the procedure showed no increase in the pericardial effusion and a bedside echocardiogram after the procedure showed no evidence of tamponade. Also, an electrocardiogram showed "no changes" and no evidence of

---

[1] Plaintiff attempts to dispute the information stated in this procedure note by reference to the expert report of his designated expert witness, Dr. Robert McCloy, Jr., M.D. By separate order, the Court has determined that Plaintiff has failed to establish Dr. McCloy's expertise regarding pericardiocentesis and interventional cardiology, and the Court has granted Defendant's motion to exclude his testimony. Therefore, Dr. McCloy's opinions do not constitute admissible evidence and will be disregarded for summary judgment purposes.

tamponade. *See* Def.'s Mot. Summ. J., Ex. 9 [Doc. 25-10] at 11. Dr. Norman continued to monitor and reevaluate Plaintiff at VAMC until April 18, 2006. On that date, Dr. Norman ordered a repeat echocardiogram to observe the pericardial effusion, and again found no evidence of tamponade. He decided that another pericardiocentesis should not be tried at that time and, instead, recommended more aggressive dialysis to treat the effusion medically and a follow-up echocardiogram in two weeks to monitor the effusion.

Defendant relies on the expert opinions of Dr. Jon Resar, M.D., a board-certified physician in internal medicine, cardiovascular medicine, and interventional cardiology. He is the director of the adult cardiac catherization laboratory and interventional cardiology at Johns Hopkins Hospital and Johns Hopkins University. Dr. Resar has concluded that Dr. Norman acted within the standard of care and used appropriate techniques during the pericardiocentesis procedure. Dr. Resar has also concluded that it was reasonable to attempt to manage Plaintiff's pericardial effusion with aggressive dialysis and medical management after the unsuccessful pericardiocentesis, and that Plaintiff's care at VAMC met the standard of care and was appropriate for his medical condition.

**Analysis**

A claim asserted under the FTCA is governed by the substantive law of the state in which the allegedly tortious act occurred. *See* 28 U.S.C. § 1346(b)(1). Under Oklahoma law, a claim of medical negligence requires proof of three essential elements: "first, that the defendant had a duty to protect the plaintiff from injury; second, that the defendant failed to properly exercise or perform that duty; and third, that the defendant's failure to properly exercise or perform that duty caused the plaintiff's injury." *See Jones v. Mercy Health Ctr., Inc.*, 155 P.3d 9, 13 (Okla. 2006); *see also McKellips v. St. Francis Hosp., Inc.*, 741 P.2d 467, 470 (Okla. 1987).

By statute, a physician's duty of care is governed by a national standard. *See* Okla. Stat. tit. 76, § 20.1. This standard generally requires "that the physician exercise the care, skill, and learning ordinarily exercised by other physicians under similar circumstances." *See Sisson ex rel. Allen v. Elkins*, 801 P.2d 722, 727 (Okla. 1990). Thus, in Oklahoma, "[i]t is well settled that in all but the extraordinary medical malpractice case, the plaintiff has the burden of producing expert testimony to support a prima facie case of negligence." *Roberson v. Jeffrey M. Waltner, M.D., Inc.*, 108 P.3d 567, 569 (Okla. Civ. App. 2005). This rule is based on the technical nature of the issues presented:

> Normally, when a patient sues a physician for failure to properly diagnose or treat the patient, the issue of fact is one of science and must be established and determined upon the testimony of skilled, professional witnesses. In other words, the rule in medical malpractice cases is that a physician's negligence must ordinarily be established by expert medical testimony. A plaintiff has the burden of proving through expert testimony: (1) the standard of medical care required of physicians, (2) that a duty existed and was breached, and (3) that this breach of duty resulted in harm to the plaintiff.

*Benson v. Tkach*, 30 P.3d 402, 404 (Okla. Civ. App. 2001) (citations omitted); *see also Roberson*, 108 P.3d at 569 ("If the origin of the injury is . . . not readily apparent to a layman, or if there are several equally probable causes of the condition, testimony of a qualified physician is essential to establish a reasonable probability the physician's negligence caused the injury.").

In this case, Defendant seeks summary judgment on the grounds that Plaintiff lacks evidence to establish either that Dr. Norman breached the applicable standard of care by his performance of the pericardiocentesis and his treatment of Plaintiff's pericardial effusion, or that any breach of those standards was a proximate cause of injury to Plaintiff. Having carefully considered Plaintiff's allegations of negligence and the parties' submissions, the Court finds that Plaintiff's malpractice claim involves complex medical issues that are not apparent to the layman. Accordingly, because Plaintiff has failed to designate a qualified expert witness to testify concerning medical negligence

5

and causation, the Court finds that Plaintiff is unable to prove the elements necessary to establish his claim of medical negligence. Therefore, Defendant is entitled to a judgment as a matter of law on Plaintiff's negligence claim.

**Conclusion**

For these reasons, Defendant's Motion for Summary Judgment [Doc. No. 25] is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 30th day of September, 2010.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE